UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID E. WILLIS II,

    Plaintiff,

    v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:21-CV-178 JD

**OPINION AND ORDER**

Plaintiff David Willis has appealed an Administrative Law Judge's denial of his claim for disability and disability insurance benefits after the ALJ found that Mr. Willis was not disabled and thus not entitled to benefits. Mr. Willis and the Acting Commissioner have fully briefed Mr. Willis's appeal. After considering the parties' briefing and the filed administrative record, the Court finds, for the following reasons, that a remand of the case to the Acting Commissioner for further proceedings is warranted.

A.    **Factual Background**

Mr. Willis applied for disability benefits in November 2018 alleging that he had become unable to work starting on January 1, 2018, because of his health conditions. (R. 179.) In his application, Mr. Willis alleged that his disability was based on a variety of conditions, including chronic inflammation, chronic pain due to multiple surgeries, chronic fatigue, hardening in the lungs, osteoarthritis, and an assortment of heart problems. (DE 194.) In July and September of 2019, the Social Security Administration denied Mr. Willis' claim at the initial and reconsideration levels of review. (R. 114, 121.)

Mr. Willis appealed and an ALJ held a hearing on Mr. Willis's claim in August 2020. During the course of the hearing, the ALJ heard testimony from Mr. Willis about his conditions and testimony from a vocational expert about the possibility of Mr. Willis being able to work in spite of his conditions. (R. 57–87.) After holding the hearing and reviewing Mr. Willis's medical records, the ALJ issued an opinion finding that Mr. Willis was not disabled. (R. 26–36.) The ALJ determined that Mr. Willis suffers from multiple severe impairments, including degenerative disc disease of the lumbar spine, left supraspinatus tear, chronic obstructive pulmonary disease, and congenital heart disease with non-ischemic cardiomyopathy. (R. 28.) However, the ALJ found that Mr. Willis's abdominal wall hernia, obesity, and urethral stricture conditions were non-severe impairments. (*Id.*)

The ALJ did not find that any of the impairments or combinations of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29–30.) After reviewing the record and listening to Mr. Willis at the hearing, the ALJ concluded that Mr. Willis has the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except can never climb ladders, ropes or scaffolds, kneel, crouch or crawl; can occasionally climb ramps and stairs, balance and stoop; can never reach overhead with the left, non-dominant, upper extremity; can frequently reach in all other directions with the left, non-dominant , upper extremity; can tolerate occasional exposure to extreme cold, extreme heat, humidity and pulmonary irritants, such as fumes, noxious odors, dusts, mists, gases and poorly ventilated areas; [and] cannot operate a motor vehicle at work.

(R. 30–31.) Based on that RFC and the ALJ's questioning of the vocational expert at the hearing, which included the vocational expert relying solely on her professional experience instead of the Dictionary of Occupational titles at certain times (R. 85), the ALJ found Mr. Willis could not perform his prior job as a nurse but that Mr. Willis was not disabled. (R. 34–35.) Mr. Willis requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Mr.

Willis's request on December 11, 2020 (R. 5), making the ALJ decision the final decision of the Acting Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g).

**B.      Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Acting Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Acting Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Acting Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Acting Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Acting Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*,

3

245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and any conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.      Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that

4

may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform other work in society at step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

D.     **Discussion**

Mr. Willis argues that the ALJ's decision should be remanded for several reasons. He argues that: (1) the ALJ erred in evaluating his subjective symptoms; (2) the ALJ erred in evaluating the medical opinion evidence; and (3) the ALJ's reliance on the vocational expert's testimony was improper because part of her testimony conflicted with the Dictionary of Occupational Titles. (DE 19 at 5–14.) The Court agrees that the ALJ erred in evaluating the medical opinion evidence, which led her to fail to form a logical bridge justifying the RFC that she ultimately reached. The Court finds remand necessary for that reason. The parties can address any remaining arguments on remand.

The ALJ considered four medical opinions in her written decision: the opinions of two agency consultants, Dr. Sands and Dr. Brill, who reviewed Mr. Willis's medical records; the opinion of Mr. Willis's treating pain management specialist, Dr. Quadri; and the opinion of Mr. Willis's treating cardiologist, Dr. Esper. (R. 33–34.) The ALJ found all of the opinions except for Dr. Espar's "not persuasive" because they were "not consistent with the available medical evidence." (R. 33–34.) The ALJ found Dr. Espar's opinion only marginally better, finding it

"somewhat persuasive" because it was "somewhat consistent with the available medical evidence." (R. 33–34.)

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

6

medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The Court finds two issues with the ALJ's medical opinion analysis that ultimately require remand. First, the ALJ failed to provide any detail in explaining why she found the various medical opinions either wholly or somewhat inconsistent with the medical evidence. And second, her failure to adopt any medical opinion left an evidentiary gap that prevented her from building a logical bridge between her evidentiary analysis and the ultimate RFC.

The Court starts with the ALJ's lack of detail in explaining why she found the various medical opinions either wholly or partially inconsistent with the medical evidence. Dr. Quadri, Mr. Willis's treating pain management specialist, opined that Mr. Willis could stand up to one hour and sit up to two hours per eight-hour workday as well as that Mr. Willis had limitations with lifting, pulling, holding objects, bending, and stooping. (R. 282–83.) The ALJ found Dr. Quadri's opinions "not persuasive because despite the provider's specialty and treating relationship with the claimant, they are vague, greatly overstate the claimant's limitations and are not consistent with the available medical evidence summarized above." (R. 33.) The ALJ did not elaborate on that statement, and her lack of elaboration leaves the Court to guess as to what portions of the "medical evidence summarized above" the ALJ specifically thought undermined Dr. Quadri's medical opinion about Mr. Willis's capabilities. Dr. Espar, Mr. Willis's treating cardiologist, opined that Mr. Willis could not stand for six to eight hours per day but could sit for six to eight hours per day. (R. 285.) The ALJ found Dr. Espar's opinion "somewhat persuasive because while the standing limitations are vague, the opinions overall are still somewhat consistent with the available medical evidence summarized above and are supported by [Dr. Espar's] specialty and treating relationship with the claimant." (R. 33.) The ALJ again failed to

7

elaborate on that generalized statement or explain how the record evidence is only somewhat consistent with Dr. Espar's opinions. Finally, the ALJ considered the agency medical opinions from Dr. Sands and Dr. Brill. Those doctors each opined that Mr. Willis was capable of light work, could both stand and sit for six hours in an eight-hour workday, could occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel crouch and crawl, and had to avoid concentrated exposure to extreme temperatures, humidity, and pulmonary irritants. (R. 34, 93–94, 106–07.) The ALJ found these opinions "not persuasive because, despite the consultants' specialties and programmatic knowledge, they are not consistent with the available medical evidence summarized above." (R. 34.) Again, the ALJ failed to provide any actual explanation for why she reached that conclusion about inconsistency with the available evidence.

The ALJ's general statements about consistency of the medical opinions when compared to the medical evidence that was before her are not enough. The regulations direct that an ALJ must explain how he or she considered the consistency factors for a medical opinion. 20 C.F.R. § 404.1520c(b). Here, the ALJ simply provided her end result, that each opinion was either "not consistent with the available medical evidence summarized above" or was "somewhat consistent with the available evidence summarized above," without giving any indication of which specific evidence she considered in coming to those conclusions. (R. 33–34.) As other judges in this district have recognized, such general statements without any further explanation are insufficient under the new regulations and require remand because they create no logical bridge between the medical evidence and the ALJ's conclusion. *See Tammy M. v. Saul*, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021) ("As this Court has set forth, the ALJ decision cannot stand under the new regulations when the ALJ finds the opinion not persuasive because it is inconsistent with medical evidence but does not explain why that evidence is inconsistent with the opinion.");

8

*Michael v. Saul*, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) (citing *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)) ("[T]he ALJ cannot merely summarize the evidence, as a whole, and then conclude that [the doctor's] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [the doctor's] opinions and why.") Left with only the ALJ's end result and no explanation of how the ALJ arrived there, the Court can only guess as to what evidence the ALJ relied on to determine the consistency of the medical opinions and therefore cannot find that the ALJ properly evaluated the medical opinion evidence.

Even if the ALJ had offered some explanation of her conclusions about the consistency of each medical opinion, however, she would still face the problem of having adopted an RFC after discounting all of the medical opinions either in whole or in part. In doing that, the Court finds the ALJ created an "evidentiary deficit" and then impermissibly created her own RFC in a way that required her to play doctor. *See Suide v. Astrue*, 371 F. Appx. 684, 689–90 (7th Cir. 2010); *Tammy M.*, 2021 WL 2451907, at *8 ("Although the ALJ is not required to adopt a specific physician opinion, by not adopting any medical opinion, the ALJ faced an evidentiary deficit."). The RFC that the ALJ ultimately adopted explained that Mr. Willis could perform "sedentary work,"[1] with the further limitations that Mr. Willis could occasionally climb ramps and stairs and balance and stoop, as well as frequently reach in all directions except for overhead with his left upper extremity, and could tolerate occasional exposure to extreme cold, extreme heat, humidity, and pulmonary irritants. (R. 31.) The only limitation in that RFC that could be connected to any

---

[1] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Further, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

9

medical opinion that the ALJ did not fully discount is the limitation, given by Dr. Espar, that Mr. Willis could sit for six hours in an eight-hour workday as part of a sedentary role. (R. 30–31, 285.) But even then, the Court must guess that the six-hour sitting limitation is within the portion of Dr. Espar's opinion that the ALJ found persuasive because the ALJ never made clear in her decision that the sitting limitation contained in the opinion was something she found consistent with the available evidence. (R. 33) (ALJ only stating that Dr. Espar's opinions *overall* are somewhat consistent with the available evidence) (emphasis added).

When looking at the rest of the RFC, it is even less clear how, after discounting the other medical opinions completely, the ALJ reached the remaining limitations, unless she played doctor or hedged between the opinions she had discounted. For example, the only medical opinions that discussed Mr. Willis being able to tolerate occasional exposure to certain temperature and breathing irritants, as the RFC references, were the agency consultants' opinions, which the ALJ wholly discounted and thus had no reason to adopt. (DE 34, 93–94, 106–07.) Additionally, there was no medical opinion adopted about how long Mr. Willis could stand during a workday, whether Mr. Willis could actually lift, pull, hold, bend, and stoop, or reach in all directions with his left hand except for overhead, as the RFC states. (R. 33–34.) Thus, the inclusion of each of these specific abilities or limitations in the RFC without medical opinion support suggests that the ALJ either impermissibly played doctor in interpreting the medical evidence for herself, *see McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Rohan v. Chater*, 98 F.3d 966, 980 (7th Cir. 1995), or impermissibly attempted to construct a middle ground between the various discounted opinions, *Adelina M. v. Kijakazi*, 2022 WL 375554, at *8 (N.D. Ill. Feb. 8, 2022). In either case, it is clear that the ALJ created an evidentiary deficit, made her own medical determinations to overcome that deficit, and thus

failed to develop an adequate logical bridge between the available medical evidence and her ultimate RFC. The Court believes that remand is required under those circumstances. *See Suide*, 371 F. Appx. at 689–90.

The Acting Commissioner's briefing did not help to allay the Court's concerns about the need for remand. First, the Acting Commissioner did not provide any substantive defense of the fact that the ALJ simply offered broad conclusions about the consistency of each medical opinion without any actual explanation of which specific portions of the considered evidence led her to those conclusions. (DE 24 at 13–15). The Acting Commissioner acknowledged that "[p]erhaps the ALJ could have been more explicit" in her medical opinion analysis but argued that the relevant standard only requires ALJs to "'minimally articulate' their justification for accepting or rejecting specific evidence." (DE 24 at 16) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). While the Acting Commissioner provided a correct recitation of the caselaw in making that argument, the ALJ's decision did not meet the caselaw requirements. The caselaw requires the ALJ to reference "specific evidence" whereas the ALJ here simply referred broadly to "the available medical evidence summarized above" as the basis for her conclusion. Courts have clearly held that such a general statement without further explanation is not sufficient under the prior caselaw or the relevant updated regulations. *See Tammy M.*, 2021 WL 2451907, at *8; *Michael*, 2021 WL 1811736, at *11. The Court thus maintains its finding that the ALJ erred in evaluating the medical opinions.

Second, the Acting Commissioner did not explain away the evidentiary deficit the ALJ created. The Acting Commissioner once again looked to relevant caselaw to construct an argument, pointing out that "an ALJ 'need not adopt any one doctor's opinion'" when arriving at an RFC. (DE 24 at 15) (citing *Fanta v. Saul*, 848 F. Appx. 655, 658 (7th Cir. 2021)). But while it

is true that an ALJ does not need to adopt one doctor's opinion in particular, the failure to adopt any medical opinion problematically forces an ALJ to face an evidentiary deficit. *See Tammy M.*, 2021 WL 2451907, at *8; *Pamela B. v. Saul*, 2021 WL 2411391, at *7 (N.D. Ind. June 14, 2021) (citing *Suide*, 371 F. App'x at 690 (remanding because after rejecting all relevant medical opinions and plaintiff's testimony, the ALJ created a situation where the RFC could only be supported by her interpretation of medical findings)). The ALJ failed to adopt any medical opinion here. The Court therefore maintains its finding that the ALJ created an evidentiary deficit by discounting the medical opinions and subsequently failed to build a logical bridge between the available evidence and the RFC because of that deficit.

On remand, the ALJ should first analyze, in greater depth, whether each medical expert's opinion on Mr. Willis's physical limitations is persuasive or unpersuasive. Specifically, the ALJ should look to the factors set forth under 20 C.F.R. § 404.1520c and explain in the required detail how the other portions of the record either conflict with or support each expert's opinion. After doing this, if the ALJ still concludes that these medical expert's opinions are all generally unpersuasive, the ALJ must fill in the "evidentiary deficit either by seeking further information from [the medical experts] or [by] obtaining the opinions of [another] independent examining physician or medical expert." *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012).

### E. Conclusion

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 30, 2022

                                            /s/ JON E. DEGUILIO  
                                            Chief Judge  
                                            United States District Court